CENTRAL SAVINGS BANK, Plaintiff in Error, v. A. B. GAR-
RISON et al., Defendants in Error.

April 10, 1876.

An acknowledgment of notice of transfer, signed in blank by the warehouse-
man on a warehouse receipt—the name of the transferee being omitted—
will hold the signers to every responsibility as bailees of the transferee,
whose name may be afterwards inserted, whether in fact known to them
as such or not.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

*Farish & Griffin,* for plaintiff in error, cited: Wag.
Stat. 220, secs. 6, 7; Lubrik v. Inglis, 1 Stark. 104; Wil-
lard v. Bridge, 4 Barb. 461.

*Cline, Jamison & Day,* for defendants in error, cited:
Baxter v. Wilkinson, 18 Vt. 190; 2 Redf. on Rys. 140,
sec. 168; Story on Bail. (8th ed.), sec. 450; Bliver v.
Hudson River R. R. Co., 35 Barb. 196; Stiles v. Davis &
Barton, 1 Black. 105.

LEWIS, J., delivered the opinion of the court.

An agreed statement of facts in this cause is to the effect
following: Defendants were general warehousemen in Sep-
tember, 1872, and received from one Quinn, on storage, a
lot of whisky and wine, giving him a negotiable warehouse
receipt therefor. Quinn thereupon transferred the receipt
to plaintiff as collateral security for a loan of $200, giving
his note for the amount, with an agreement showing the
details of the transaction. Afterwards the goods were
attached by a creditor of Quinn's and sold by the sheriff
under execution upon the judgment which ensued. Quinn
having absconded, this suit was instituted to indemnify
plaintiff for its loss of the security upon the loan made to
him.

The warehouse receipt was regularly indorsed by Quinn
to the plaintiff, and bore a written or printed acknowledg-
ment of notice of transfer, signed in blank (the name of

.the transferee being omitted) by the defendants. The defendants had, however, no actual notice or knowledge of the transfer to plaintiff until after the sheriff's sale of the property, nor had the plaintiff until after the same event, any notice of the attachment proceedings.

Defendants paid no attention to the attachment suit, or the seizure and sale, but permitted them to take their course. The case being submitted to the court, without a jury, upon the agreed facts, judgment was rendered for the defendants. This action may be regarded as the sustaining of a demurrer to the evidence, and will be so considered here.

Our statute makes warehouse receipts negotiable, by written indorsement thereon and delivery, in the same manner as bills of exchange and promissory notes. It makes the transferee the owner of the goods, wares, etc., represented by the receipt, and prohibits the delivery of such goods to any person except on surrender and cancellation of the receipt. So far, the law would appear to hold the defendants accountable to the plaintiff for failure of duty arising out of the relations to each other and to the property. Plaintiff insists that defendants were bound to hold the property against all comers until the surrender and cancellation of the receipt; that the duty and right so to do, being commanded by statute, cannot be interfered with, even by a public officer. That it was at least their duty to defend the attachment seizure, which they could have done successfully, by virtue of their special property in the goods thus secured to them by law.

Defendants, on the other hand, show, from several high authorities, that a warehouseman or carrier has no right to hold personal property against an execution or attachment in the hands of an officer, and that his responsibility to the owner ceases upon a seizure by such means, even though the suit be between entire strangers. But all discussion upon these matters seems to be superseded by an additional provision of the statute. By section 10 of the same act

(Wag. Stat. 221) it is declared that " so much of the preceding sections of this act as forbids the delivery of property, except on surrender and cancellation of the original receipt or bill of lading, * * * shall not apply to property replevied or removed by operation of law." Here is a complete defense against plaintiff's claims in this relation.

But there was another incident in the transactions, whose influence lies in a different direction. The defendants signed, in blank, an acknowledgment of notice of the transfer of their receipt. The omission of the name of the transferee simply gave to a *bona fide* holder the right to fill the blank at any time, even at the trial, if necessary. Was the effect of this acknowledgment materially changed by the fact that defendants had no actual knowledge of the party to whom the transfer was made? Let us first inquire what would have been the effect of such actual knowledge if present. The defendants would thereby have become bailees of the plaintiff for all purposes. Upon the levying of the attachment, their first duty would unquestionably have been to inform plaintiff of the fact, so that it might protect its property by the means which the law has provided. This duty would have involved a liability for all damages resulting to the plaintiff if they failed to perform it.

The written acknowledgment of notice, signed by the defendants, was at least an admission that they assumed all the responsibilities which would attach to notice in fact. It was a waiver of further notice. It was a declaration to the transferee, whomever he might be, that he might treat them, in every respect, as his acknowledged bailees, and that they would never attempt, upon any plea of want of notice, to evade the duties and liabilities belonging to that position. It was upon this information, thus given to plaintiff, that the latter advanced its money to Quinn. The law of estoppel can find no better application in the range

of human affairs. To permit the defendants now to deny actual notice of the plaintiff's rights as transferee, with a claim of immunity from the legitimate consequences of such notice, would be to repudiate all the learning on that subject. However honest may have been the defendants' intentions in the present case, we cannot thus open a door to possible frauds in commercial circles, where fair dealing is of paramount interest to the entire public at large.

It thus appears to us that a very important feature in the plaintiff's rights was ignored by the Circuit Court. For this reason the judgment is reversed and the cause remanded. Judge GANTT concurs ; Judge BAKEWELL, who was of counsel in the case below, not sitting.